| | |
|---|---|
| **JESSE NORWOOD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Cause No. 1:15-cv-00249-SLC** |
| **EAST ALLEN COUNTY SCHOOLS,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Before the Court is a motion for summary judgment (DE 150), filed by Defendant East

Allen County Schools ("EACS"), asserting that it is entitled to judgment as a matter of law on

*pro se* Plaintiff Jesse Norwood's claims that EACS constructively discharged him on the basis

of his race and retaliated against him, in violation of 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"),

and 42 U.S.C. § 1981.[1]  EACS filed a brief in support of its motion for summary judgment (DE

151) and attached several exhibits (DE 152; DE 158).  Norwood filed a response brief (DE

175), also attaching several exhibits (DE 171).  EACS filed its reply (DE 180), with additional

exhibits (DE 181), and thus, the matter is fully briefed.

Also before the Court is a motion to strike exhibits attached to Norwood's response to

EACS's motion for summary judgment.  (DE 179).  Norwood filed a response (DE 189), but

EACS did not file a reply, and its time to do so has passed, N.D. Ind. L.R. 7-1(d)(2)(B).

Accordingly, this matter is ripe for ruling.

Finally, Norwood filed a motion to "dismiss" EACS's case, alleging that EACS altered or

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331.  Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.  (DE 10).

destroyed evidence. (DE 190). EACS filed a response (DE 191), and Norwood did not file a reply, and his time to do so has passed, N.D. Ind. L.R. 7-1(d)(2)(B). Therefore, Norwood's motion to "dismiss" is ripe also for ruling.

As discussed below, EACS's motion for summary judgment will be granted, EACS's motion to strike will be granted in part, and Norwood's motion to "dismiss" will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

A. <u>Defined Terms</u>

The facts of this case require working knowledge of relevant vocabulary words and abbreviations, as provided below.

- "Article 7" – 511 Ind. Admin. Code 7 *et seq*.; an Indiana state statute that imposes unique obligations on special education teachers. (DE 152-1 ¶ 19; DE 152-3 ¶¶ 4, 17).

- "IDEA" – The Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et seq*.; a federal statute that imposes unique obligations on special education teachers. (DE 152-1 ¶ 19; DE 152-3 ¶¶ 4, 17; DE 152-5 ¶ 13).

- "IEP" – Individualized Education Program; a document mandated by state and federal law (the IDEA and Article 7) that outlines the specific education services that a student needs to receive; tailored to each special education eligible student based on that student's needs. (DE 152-3 ¶¶ 19-20).

- "PDO" – Professional development opportunity offered by SPED (defined below) to

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Norwood, the nonmoving party. *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 440 (7th Cir. 2011); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). However, because the Court will strike certain exhibits to Norwood's motion for summary judgment, as discussed *infra*, the Court's recitation of facts does not include information contained in those stricken exhibits.

special education teachers on a monthly basis in the form of workshops, one-on-one assistance, open labs, and other training; meant to assist special education teachers in satisfying their obligations under the IDEA and Article 7. (DE 152-3 ¶¶ 24-26).

- "SPED" – The EACS Special Services Department; responsible for overseeing and evaluating obligations that are unique to special education teachers, such as Article 7 and the IDEA. (DE 152- ¶ 20; DE 152-3 ¶ 4; DE 152-5 ¶ 12).

- "TER" – A Teacher Effectiveness Rubric; a rubric negotiated by EACS and the Union (defined below) evaluating teachers according to four domains: purposeful planning; teacher leadership; effective instruction; and core professionalism. (DE 152-1 ¶¶ 17-18; DE 152-3 ¶¶ 15-16; DE 152-5 ¶ 12).

- "TOR" – Teacher of record; primary education instruction, responsible for implementing IEP. (DE 152-1 ¶ 54; DE 152-5 ¶ 17).

- The "Union" – The East Allen Educators Association and the EACS chapter of the Indiana State Teachers Association, which represents EACS teachers in certain matters with EACS. (DE 152-1 ¶¶ 14-15; DE 152-5 ¶ 11).

B. 2010-2011 and 2011-2012 School Years[3]

In November 2010, EACS hired Norwood as a special education teacher at Paul Harding High School. (DE 152-1 ¶ 23, at 75-76). In May 2011, Paul Harding High School closed and so, in the 2011-2012 school year, EACS reassigned Norwood to Heritage High School. (DE

---

[3] Norwood's response brief includes a six-page "Response to Statement of Undisputed Material Facts." (DE 175 at 19-25). This section of Norwood's brief lacks citations to any sources supporting his characterization of the facts. Because Norwood does not "cit[e] to particular parts of material in the record," the Court need not consider his statement of facts. *See* Fed. R. Civ. P. 56(c)(1)(A), 56(c)(3).

152-3 ¶ 38).  Robert Rohrbacher ("Rohrbacher") was principal at Heritage High School and served as Norwood's immediate supervisor.  (DE 152-3 ¶ 38).

During the spring of 2012, Norwood's IEP review scores were 37.1% and 39.1%.  (DE 152-3 ¶ 45, at 40).  According to EACS's IEP review procedures, a teacher that receives a score of less than 50% on an IEP review is subject to an IEP review in the fall and spring the following year.  (DE 152-3 ¶¶ 27-28, 32, at 37).  Additionally, if a teacher receives a score of 50% or below in IEP reviews in two consecutive years, that teacher is subject to an IEP review in the fall and spring of the following school year, and the principal of the school is informed of the teacher's scores.  (DE 152-3 at 37).

In May 2012, Rohrbacher performed a TER review of Norwood, and noted that Norwood was effective in "Purposeful Planning," "Teacher Leadership," and "Effective Instruction," and highly effective in "Core Professionalism."  (DE 171-2 at 67).

C. 2012-2013 School Year

In October 2012, EACS held a "manifestation determination conference" regarding one of Norwood's students, B.G.[4]  (DE 152-3 ¶ 53).  During this conference Norwood told Connie Brown ("Brown"), the Director of Special Services at EACS, that although B.G.'s IEP required him to receive counseling services, B.G. was not receiving counseling services because his guardians had signed a consent form to stop counseling services.  (DE 152-3 ¶¶ 2, 53).  However, Brown later found out that B.G.'s parent did not sign a consent form to stop counseling services.  (DE 152-3 ¶ 53).  Because Norwood did not implement the IEP as written,

---

[4] A manifestation determination conference occurs when a special education student performs or causes some action that may result in that student being suspended or expelled.  (DE 152-3 ¶ 54).

EACS could not expel B.G.  (DE 152-3 ¶ 53).

In November and December 2012, SPED reviewed IEPs for two of Norwood's students. Norwood scored 55.8% in the review of T.H.'s IEP[5] and 42.5% in the review of J.W.'s IEP.  (DE 152-3 ¶ 58, at 40).  In Brown's affidavit, she testifies that she directed Rohrbacher to note in Norwood's TER that Norwood had issues with IEP compliance, but that TER does not reference issues with IEPs.  (DE 152-3 ¶ 61).

D. 2013-2014 School Year

In the 2013-2014 school year, Matthew Widenhoefer ("Widenhoefer") replaced Rohrbacher as principal of Heritage High School and became Norwood's immediate supervisor. (DE 152-3 ¶ 62; DE 152-5 ¶¶ 2, 10).

In the fall of 2013, Norwood scored 50% on a student's IEP.  (DE 152-3 ¶ 78, at 43, 221-22).  Because of this review, and because Norwood received a score of 50% or below in an IEP review the previous year, he was placed in the group of teachers who scored "50% or below on at least one of" their students' IEP reviews.  (DE 152-3 ¶ 77).  Also, SPED placed Norwood on a corrective action plan beginning in October 2013, providing him with one-on-one assistance in addition to offering PDOs.  (DE 152-3 ¶ 66).

In January 2014, Widenhoefer evaluated Norwood using TER, and rated him as an "effective" teacher.  (DE 152-5 at 9-10).  Notably, Widenhoefer indicated that Norwood was meeting "Policy and Procedures," and he gave Norwood an "Average" rating for "Track[ing] Student Data and Analyz[ing] Progress."  (DE 152-5 at 9).

---

[5] Norwood claims that he did not teach a student named T.H.; rather, he taught a student named T.C.  (DE 175 at 10; DE 152-4 at 41-43).  EACS has clarified that T.H. and T.C. are the same student.  (DE 181-2 ¶ 17; DE 181-4 ¶ 11, at 10).

In February 2014, SPED alleged that Norwood was not implementing the IEP of a student, S.S., as written.  (DE 152-3 ¶¶ 71-72; DE 152-7 ¶¶ 17-18).  In particular, according to S.S.'s IEP, he was supposed to have his first period class in the "Emotionally Disturbed" classroom, and S.S. was supposed to have "preferential seating and peer buddies at lunch."  (DE 152- 5 ¶ 17).  Norwood had not implemented these aspects of S.S.'s IEP.  (DE 152-5 ¶ 17; DE 152-7 ¶¶ 16-19).

Widenhoefer investigated the allegations and determined that Norwood had not implemented S.S.'s IEP as written.  (DE 152-5 ¶¶ 18-20).  Following this determination, on or around February 26, 2014, Widenhoefer issued an "Oral Written Warning" to Norwood.  (DE 152-3 ¶ 73).  Widenhoefer and Brown advised Norwood of his duties as the TOR to implement the IEP of his students and to comply with Article 7.  (DE 152-5 at 18).  Widenhoefer advised Norwood that the warning should be construed as a directive, and that if Norwood did not comply with EACS's expectations as explained in the warning, his conduct would be considered insubordination.  (DE 152-5 at 19).

On or around February 14, 2014, a manifestation determination conference was convened regarding one of Norwood's students, C.F.  (DE 152-3 at 216).  Norwood had not finalized C.F.'s IEP as of the manifestation determination conference, and he did not do so within 10 days following the manifestation determination conference as required.  (DE 152-3 at 216).

In March 2014, Jessica Thompson, the Special Education Supervisor at EACS, informed Norwood and various members of SPED that Norwood had missed the deadline for finalizing the IEP.  (DE 152-3 ¶ 75, at 215).  This was the second time that Norwood had failed to finalize an IEP that month.  (DE 152-3 ¶ 75, at 214-15).  Additionally, Norwood had not corrected errors on

an IEP, despite Brown telling him to do so.  (DE 152-3 ¶ 76, at 218).  Later in March 2014, Widenhoefer evaluated Norwood using TER.  (DE 171-2 at 140-41).  Widenhoefer assessed Norwood as "effective" in every category, except that Widenhoefer found that Norwood's "Competency" necessitated improvement.  (DE 171-2 at 140-41).

E. <u>August 2014-November 2014</u>

In the fall of 2014, Norwood failed to obtain written consent from two students' guardians before excusing their general education teacher from a parent-teacher conference, despite being required to do so.  (DE at 152-3 ¶ 86, at 254-57; DE 171-2 at 179).  Additionally, Norwood "handed out a nearly blank [move-in] IEP" at a student's move-in conference, which violated SPED policy.  (DE 152-3 ¶¶ 87-88, at 271-72).  And although Norwood claimed that he began working on the IEP the afternoon before the case conference, "there was no User Activity found in the IEP system until approximately 45 minutes prior to the start of the case conference." (DE 171-2 at 179).  Norwood had also failed to follow protocol for contacting the student's guardians.  (DE 171-2 at 179).  Brown believed that Norwood had "fabricated being given a directive not to finalize [the] IEP."  (DE 171-2 at 179).

In another case, Norwood did not finalize a student's IEP within the 10-day deadline following a case conference.  (DE 152-3 ¶¶ 87-88, at 271-72).  Norwood also struggled to identify "measurable goals" in two students' IEPs, despite receiving training and feedback on goal-setting for two years.  (DE 152-3 ¶ 89; DE 171-2 at 179).  On three occasions in the fall of 2014, Norwood had failed to conduct regular assessments of his students' progress in achieving their goals as described in their IEPs.  (DE 171-2 at 179).

F. <u>December 2014-February 2015</u>

On December 3, 2014, Norwood met with Widenhoefer; Jennifer Snyder ("Snyder"), Manager of Special Services at EACS; Chad Houser ("Houser"), Assistant Principal at Heritage High School; Steve Snodgrass ("Snodgrass"), the Union building representative; Angela Miller ("Miller"), Director for the Union; and Brown. (DE 152-3 ¶ 91; DE 152-5 ¶ 23). The meeting addressed "serious concerns" with Norwood's performance, specifically with respect to IEPs, case conference compliance, and Norwood's understanding of his responsibilities. (DE 152-3 ¶ 92). Additionally, Brown was concerned that Norwood's students had behavioral issues or regression. (DE 152-3 ¶ 92). Brown noted that she would not accuse Norwood of violating SPED protocols, Article 7, or the IDEA until allowing Norwood the opportunity to respond to their concerns. (DE 152-3 ¶ 103).

During the meeting Norwood was asked a series of questions related to the IDEA and Article 7 procedures and requirements. (DE 152-3 ¶ 93). Based on his responses, Brown believed that Norwood lacked an understanding of his basic responsibilities, knowledge of his students, and working knowledge of key compliance issues. (DE 152-3 ¶ 95). Brown believed that Norwood had failed to comply with the procedural requirements of Article 7 numerous times and that he was not fully honest in recounting certain situations. (DE 152-3 ¶ 95).

Brown asked Norwood which of his students were receiving mental health services from the Bowen Center. (DE 152-3 ¶ 99). Norwood inaccurately represented at the meeting that three of his students were receiving services from the Bowen Center, when in reality they were not. (DE 152-3 ¶ 100). Additionally, Norwood failed to mention that a student was receiving counseling services from the Bowen Center. (DE 152-3 ¶ 100). In all, Norwood only accurately represented that one student was receiving counseling services from the Bowen Center. (DE

152-3 ¶ 100).

After this meeting, EACS's administration and SPED afforded Norwood the opportunity to respond to their concerns by providing documentation at a follow-up conference on December 15, 2014. (DE 152-3 ¶¶ 91, 101, 103). This conference was later moved to December 19, 2014. (DE 152-3 ¶ 104, at 324-25).

At some time between December 3 and 19, 2014, Brown met with Snyder; Widenhoefer; Houser; Amanda Ricketts, Human Resources Director at EACS; and Dr. Kenneth Folks ("Folks"), Superintendent at EACS to discuss Norwood's performance. (DE 152-3 ¶ 109). They debated the best course of action and agreed to wait and see if Norwood would provide them with any additional documentation before reaching a final decision. (DE 152-3 ¶ 110).

On December 16, 2014, Widenhoefer met with Snyder; Brown; Miller; and Greg Geise ("Geise"), President of the Union's EACS chapter. (DE 152-10 ¶ 2; DE 152-5 ¶ 26). Widenhoefer, Brown, and Snyder had access to a binder "documenting Norwood's struggles with the IDEA and Article 7 as well as compliance-related issues and other problems that SPED identified during his employment with EACS." (DE 152-5 ¶ 26). Neither Geise nor Miller saw the contents of this binder, as it was not part of Norwood's personnel file and EACS was under no obligation to show it to Norwood or the Union. (DE 152-5 ¶ 26).

Following this meeting, Miller and Geise concluded that the EACS administration could terminate Norwood's contract, and that Norwood did not have any defense if EACS chose to do so. (DE 152-10 ¶ 10). However, Geise testified that "no one in the East Allen County School Administration said to [him] that they were considering or recommending the termination of Mr. Norwood's contract." (DE 152-10 ¶ 11). Miller and Geise then met with Norwood, explained

their belief that EACS had enough evidence to fire him, and encouraged him to resign because doing so would allow him to truthfully answer in future job applications that he did not resign in lieu of termination.  (DE 152-10 ¶ 12).  Following this conversation, Norwood advised Geise and Miller that he would resign.  (DE 152-10 ¶ 112).

Brown and Widenhoefer testified that between December 3, 2014, and December 19, 2014, they did not state to Norwood, Miller, or Geise, or anyone else that EACS intended to terminate Norwood's contract; that EACS intended to recommend that Norwood be terminated; or that EACS intended to recommend that Norwood resign.  (DE 152-3 ¶¶ 112, 114; DE 152-5 ¶ 28).  Brown and Widenhoefer testified that they never stated to anyone from the Union that the Union should pressure Norwood to resign.[6]  (DE 152-3 ¶¶ 112-14; DE 152-5 ¶ 28).

On December 18, 2014, Norwood emailed Folks and Widenhoefer communicating his intention to resign.  (DE 152-5 at 23).  Widenhoefer secured Norwood's signature on his letter of resignation on December 19, 2014.  (DE 152-5 ¶ 30).  The December 19, 2014, meeting did not take place.  The EACS Board of Trustees accepted Norwood's resignation effective January 5, 2015.  (DE 152-1 ¶ 35, at 131).  Norwood filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), on January 21, 2015, and filed his second charge on February 2, 2015.  (DE 1 ¶ 3).  In Norwood's charges, he alleged that he was terminated because he is African American.  (DE 1-1 through DE 1-4).

---

[6] Norwood disputes EACS's characterization of events leading up to December 19, 2014.  In particular, Norwood asserts that Widenhoefer told Reverend Stephen Terry ("Rev. Terry"), a member of the EACS Board of Trustees at the time, that Norwood would be fired at the December 19, 2014, conference.  (DE 171-2 at 230, 287).  Rev. Terry also told Norwood that Geise stated that EACS intended to terminate Norwood's contract.  (DE 171-2 at 287).  As discussed *infra*, the Court will not consider Norwood's portrayal of these events.

## II. MOTION TO STRIKE

EACS moves to strike Exhibits 1, 2, 10, 28, and 32 from Norwood's response to summary judgment, asserting that these exhibits do not comply with Federal Rule of Civil Procedure 56, the Federal Rules of Evidence, and/or 28 U.S.C. § 1746. It is well established that statements in affidavits that are not sworn under oath do not comply with Rule 56(c). *See Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1255 n.13 (7th Cir. 1990) (citations omitted); *Johnke v. Espinal-Quiroz*, No. 14-CV-6992, 2018 WL 3361888, at *5 (N.D. Ill. July 9, 2018) (citations omitted); *Holder v. Olin Corp.*, No. 13-CV-1236-SMY-DGW, 2015 WL 507177, at *2 (S.D. Ill. Feb. 5, 2015) (citations omitted). In that regard, 28 U.S.C. § 1746 provides that:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> > (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date)."

Additionally, "a party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (citing *Wigod v. Chi. Mercantile Exch.*, 981 F.2d 1510, 1518-19 (7th Cir. 1992)); *see* Fed. R. Evid. 801.

First, EACS asserts that Norwood's Exhibit 1, a PowerPoint presentation entitled "Perceptions and Recommendations: A Report to the Board of Trustees and Central Office of East Allen County Schools by Dr. Daryl R. Yost" (DE 171-2 at 27-32), should be stricken because Norwood did not lay a foundation for the exhibit or authenticate it. Moreover, EACS argues that the information contained in the exhibit is not made under penalty of perjury. Norwood does not respond to EACS's argument, and its argument is well taken. *Gilty*, 919 F.2d at 1255 (citations omitted). Accordingly, the Court will strike Exhibit 1. (DE 171-2 at 27-32).

Second, EACS asserts that some portions of Exhibit 2, titled "East Allen County Schools Teacher Effectiveness Rubric Handbook" (DE 171-2 at 34-41), should be stricken because they are not exhibits to Dr. Neal Brown's deposition and are not true and accurate copies of the EACS TER Handbook. In particular, EACS moves to strike pages DE 171-2 at 34-35 (the title page and the following page, listing board of trustee members and TER Committee members), and 39-41 (describing a protocol for monitoring teachers following their TER review), because these pages were not reviewed in Dr. Brown's deposition and because Norwood did not authenticate that these pages are true and accurate copies of the TER Handbook.

Norwood argues that the Court should focus on the admissibility of the content in Exhibit 2. Norwood relies on *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003), where the Ninth Circuit Court of Appeals found that, on summary judgment, the district court could consider the content of Fraser's diary, even though the diary itself was not submitted in a form admissible at trial. However, in contrast to *Fraser*, here it is not clear that the pages that EACS moves to strike in Exhibit 2 would be admissible at trial. *Id.* at 1037 ("The contents of the diary are mere recitations of events within Fraser's personal knowledge and, depending on the

circumstances, could be admitted into evidence at trial in a variety of ways.").  Moreover, Norwood has not argued that the pages at issue satisfy the requirements of the Federal Rules of Civil Procedure; rather, he merely states that the "contents should be focused on."  (DE 189 at 2).  Thus, EACS's motion to strike will be granted as to DE 171-2 at 34-35, 39-41.

Third, EACS moves to strike pages from Exhibit 10.  Specifically, EACS moves to strike DE 171-2 at 107-08 (an IEP review, which is missing the "Comments" section at the end of the IEP and the footer), 109-10 (an IEP review, which is missing the "Comments" section at the end of the IEP and the footer), and "documents [] not previously obtained by EACS," pursuant to a subpoena that Norwood served on the EEOC.  (DE 179 at 4-5).  However, EACS does not identify which documents, if any, that Norwood obtained from the EEOC pursuant to his subpoena that EACS did not possess.  Again, Norwood merely argues that the substance of the pages in question is admissible without any specificity.  With respect to Exhibit 10 pages DE 171-2 at 107-10, these pages do not appear to be true and accurate copies of the original IEP review and striking them will not prejudice Norwood, as EACS has furnished copies of these IEP reviews with the information that is missing from Norwood's attached copies.  Thus, the Court will strike DE 171-2 at 107-10.  However, because EACS has not identified documents that Norwood allegedly obtained as a result of his subpoena but did not previously produce, the Court will deny EACS's motion to strike those documents.

Third, EACS moves to strike Exhibit 28 attached to Norwood's response.  Exhibit 28 is a statement made by Rev. Terry that between December 3 and 19, 2014, Widenhoefer told him that Norwood would be terminated at the December 19, 2014, conference.  (DE 171-2 at 287).  Rev. Terry subsequently relayed this information to Norwood and encouraged him to resign

voluntarily. (DE 171-2 at 287). EACS argues that Exhibit 28 should be stricken because it is inadmissible hearsay and because Rev. Terry's statement was not made under penalty of perjury as required by 28 U.S.C. § 1746(1). Norwood argues that Rev. Terry can testify to these events at trial and therefore, the statement is admissible. However, even at trial, Rev. Terry's testimony regarding an out-of-court statement by Widenhoefer would constitute inadmissible hearsay. *See* Fed. R. Evid. 801. Moreover, EACS is correct that Rev. Terry's statement does not conform to the requirements of 28 U.S.C. § 1746(1) because it was not made under penalty of perjury. Therefore, EACS's motion will be granted with respect to Exhibit 10.[7] (DE 171-2 at 287).

Finally, EACS moves to strike Exhibit 32. (DE 171-2 at 296-97). Exhibit 32 is an email from Norwood to Giese, dated December 17, 2014. In the email, Norwood requests an opportunity to review a binder used at the December 16, 2014, meeting. EACS represents that in the course of discovery, the only version of this document that Norwood produced contained a response by Giese, and a subsequent response by Norwood. Therefore, EACS argues, Exhibit 32 is not a true and accurate copy of the email produced in discovery and must be stricken. Again, Norwood's assertion that the contents are admissible does not overcome EACS's argument. Therefore, the Court will strike Exhibit 32. (DE 171-2 at 296-97).

In sum then, EACS's motion to strike will be granted as to DE 171-2 at 27-32, 34-35, 39-41, 107-10, 287, and 296-97, but will be denied as to the unidentified documents that Norwood allegedly subpoenaed and obtained from the EEOC but failed to produce to EACS.

---

[7] Similarly, EACS asserts that the Union's response to Norwood's charge of discrimination (DE 171-2 at 71-77) is inadmissible hearsay. EACS's point is well taken, as the response explicitly states that "the representations herein are not based on first knowledge . . . ." (DE 171-2 at 70); *see* Fed. R. Civ. P. 56(c)(4) (requiring a statement to be made on the basis of personal knowledge). Therefore, the Court will not consider the Union's response to Norwood's charge of discrimination on summary judgment.

### III.  MOTION FOR SANCTIONS

Moving on, Norwood filed a motion alleging that EACS forged or destroyed evidence in support of its motion for summary judgment, and that the Court should "Dismiss [EACS's] Case Because of Forgery of Documents."  (DE 190).  The Court construes Norwood's motion as a motion seeking sanctions against EACS for alleged spoliation of evidence.

"The Court has discretion to sanction a party for spoliation of evidence."  *Bryant v. Gardner*, 587 F. Supp. 2d 951, 967-68 (N.D. Ill. Nov. 21, 2008) (citation omitted); *see also ChampionsWorld, LLC v. U.S. Soccer Fed'n*, 276 F.R.D 577, 582 (N.D. Ill. Aug. 17, 2011) (citation omitted).  "Sanctions [for spoliation of evidence] include awarding reasonable expenses, attorney fees, barring evidence or arguments, permitting adverse inferences, and dismissing claims or entering default judgment."  *Bryant*, 587 F. Supp. 2d at 968 (citations omitted); *see Norman-Nunnery v. Madison Area Tech. Coll*., 625 F.3d 422, 428 (7th Cir. 2010) ("In order to draw an inference that the missing documents contained information adverse to the defendants, [the plaintiff] must demonstrate that the defendants intentionally destroyed the documents in bad faith." (citations omitted)).

"Apart from the discovery rule, a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct."  *Ramirez v. T&H Lemat, Inc*., 845 F.3d 772, 776 (7th Cir. 2006) (citing *Chambers v. NASCO, Inc*., 501 U.S. 32, 46-50 (1991)).  The party moving for sanctions for spoliation of evidence must demonstrate:

> (1) that there was a duty to preserve the specific documents and/or evidence, (2) that the duty was breached, (3) the culpability for the breach rises to a level of willfulness, bad faith or fault, (4) the

> party seeking the evidence suffered prejudice as a result of the
> breach, and (5) an appropriate sanction can ameliorate the breach.

*Cahill v. Sheriff of Cook Cty. Thomas Dart*, No. 13 C 361, 2016 WL 7093434, at \*4 (N.D. Ill. Mar. 4, 2016), *R&R adopted as modified sub nom. Cahill v. Dart*, No. 13-CV-361, 2016 WL 7034139 (N.D. Ill. Dec. 2, 2016).

Here, Norwood claims that EACS "purposefully destroyed segments of [his] phone records," and that EACS changed the dates on certain IEPs. (DE 190). However, Norwood has not submitted any evidence supporting his spoliation allegations, and therefore, he has failed to show that EACS altered or destroyed documents, let alone that EACS acted in bad faith as to warrant sanctions. *See Park v. City of Chi.*, 297 F.3d 606, 615 (7th Cir. 2002) ("Rather, to draw such an inference, the employer must have destroyed the documents in bad faith." (citations omitted)); *Vukadinovich v. Griffith Pub. Sch.*, No. 2:02 CV 472, 2008 WL 5377720, at \*1 (N.D. Ind. Dec. 18, 2008) ("Likewise, sanctions may be imposed when a party persistently fails to comply with discovery orders and 'displays willfulness, bad faith or fault' in doing so." (quoting *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 720 (7th Cir. 2001)). Moreover, to the extent that Norwood asserts that EACS destroyed or altered his mobile phone records, he has failed to show how EACS's exhibit prejudices him, as Norwood attached an identical exhibit in support of his opposing brief. (*Compare* DE 152-10 at 6, *with* DE 171-2 at 286).

Norwood also appears to assert that EACS altered the dates on unspecified IEPs. Norwood's conclusory and unsubstantiated allegations fall short of establishing that EACS breached a duty to preserve evidence. *See Vukadinovich*, 2008 WL 5377720, at \*1 ("Here, though as asserted, Vukadinovich was 'crystal clear' in his intent to sue Hammond if he was not

hired, there is no evidence of a bad faith destruction of the contract."); *Forrest v. All Cities Mortg. & Fin., Inc.*, No. 06-C-424, 2007 WL 3026787, at *1 (E.D. Wis. Oct. 16, 2007) ("Forrest offers no evidence that All Cities is actually destroying evidence or failing to retain relevant documentation. In this light, Forrest's motion is unnecessary."). Therefore, Norwood's "Motion to Dismiss [EACS's] Case Because of Forgery of Documents" will be denied. The Court will next turn to EACS's motion for summary judgment.

## IV. MOTION FOR SUMMARY JUDGMENT

A. <u>Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). Courts "view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citing *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 20008)). The Court is tasked only with deciding whether "there is any material dispute of fact that requires a trial" within the "evidence of record[.]" *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

A court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne*, 337 F.3d at 770 (citations omitted). "[I]f the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party[,]" then summary judgment may not be granted. *Id*. However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively

17

demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771 (citation omitted).

B. <u>Norwood's Discrimination Claims</u>

Turning to Norwood's Title VII and § 1981 discrimination claims,[8] the issue before the Court "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action."[9] *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). However, this test does "not alter '[t]he burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).'" *David v. Bd. of Trs. of Cmty. Coll. Dist.* No. 508, 846 F.3d 216, 224 (7th Cir. 2017) (alteration in original) (quoting *Ortiz*, 834 F.3d at 766). Thus, Norwood must establish a *prima facie* case of discrimination by showing "that '(1) [he] is a member of a protected class; (2) [his] job performance met [EACS's] legitimate expectations; (3) [he] suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably.'" *Khowaja v. Sessions*, 893 F.3d 1010, 1014-15 (7th Cir. 2018) (first, second, and fourth alterations in original) (quoting *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017)). If Norwood establishes "a *prima facie* case," the burden shifts to EACS to provide "a legitimate, non-discriminatory reason for terminating his employment." *Id*. at 1015 (citation omitted). "Then,

---

[8] "[T]he elements and methods of proof for § 1981 claims are 'essentially identical' to those under Title VII, so [the Court] need not analyze them separately." *Brown v. Advocates S. Suburban Hosp.*, 700 F.3d 1101, 1004 n.1 (7th Cir. 2012) (quoting *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010)).

[9] In its brief, EACS argues that Norwood cannot prove that he was terminated because of his race using the "direct" or "indirect" methods. However, the Seventh Circuit has explained that "[e]vidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765. And while the two methods are not subject to two different legal standards, the *McDonnell Douglas* burden-shifting scheme remains intact. *Id*. at 765-66. Thus, the Court evaluates the arguments in this case using the *McDonnell Douglas* framework.

[Norwood] must present evidence that the proffered reason is pretext." *Id.* (citation omitted).

EACS does not dispute that Norwood is a member of a protected class.

### 1. *Norwood Did Not Meet EACS's Legitimate Employment Expectations*

"Ordinarily, for a plaintiff to successfully state a prima facie case of discrimination, he must show that he met his employer's legitimate expectations." *Austin v. City of Chi.*, No. 14-CV-9823, 2018 WL 1508484, at *7 (N.D. Ill. Mar. 27, 2018) (citation omitted). "[T]his issue of satisfactory job performance often focuses on the same circumstances as must be scrutinized with respect to the matter of pretext." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 886 (7th Cir. 2001) (footnote omitted). Thus, the Court's analysis of whether Norwood satisfied EACS's legitimate employment expectation overlaps with the Court's analysis of pretext. *See Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006) ("However, if the plaintiffs argue that they have performed satisfactorily and the employer is lying about the business expectations required for the position, the second prong and the pretext question seemingly merge because the issue is the same—whether the employer is lying." (citing *Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1179 (7th Cir. 1997))).

EACS assert that Norwood struggled to comply with IEP requirements, scoring 50% or below in three separate IEP reviews in addition to the following:

> During the 2014-2015 school year, Norwood (1) did not obtain parental consent when excusing a general education teacher from a case conference; (2) provided a blank IEP at a student's case conference; (3) failed to finalize a student's IEP within ten-business days of a case conference; (4) failed to write measurable goals for students; (5) demonstrated inadequate understanding of his position and the requirements of a special education teacher; (6) failed to correctly document student counseling services; (7) did not keep consistent communication with parents; (8) did not

19

> keep meaningful student data as it related to IEP goals; (9) lied to
> the SPED; (10) fabricated students' behavior goals scores; and (11)
> provided an IEP with the prior school year's information.

(DE 151 at 30 (citations omitted)).  Norwood responds that his TER evaluations, which he

contends encompass all aspects of his job performance, during the relevant time period indicate

that he was an adequate teacher.

Norwood's argument relies on Dr. Neal Brown's deposition testimony that "[t]he TER

encompasses a teacher's whole job responsibility in East Allen County Schools, there is nothing

outside of that rubric."[10]  (DE 171-2 at 44-45).  However, Dr. Brown's testimony merely

establishes his belief regarding the subject matter covered by TER., not what Norwood's TER

evaluators actually considered in their evaluations.  By contrast, Widenhoefer did not consider

whether Norwood satisfied the unique obligations of a special education teacher when he

assessed Norwood using TER.[11]  (DE 152-5 ¶ 12; *see also* DE 152-1 ¶¶ 17-18; DE 152-3 ¶¶ 15-

16).  In other words, Norwood disputes whether his obligations as a special education teacher

*should* have been included in a TER evaluation, but he does not dispute that his degree of

compliance was *not actually* considered by any of his TER evaluators.

Norwood does not dispute that he was obligated to comply with EACS's and SPED's IEP

---

[10] Dr. Deborah Watson also testified that "IEP writing" would be evaluated "as part of the professionalism [section] of the [TER], completes assignments."  (DE 171-2 at 63).  Norwood claims that Dr. Watson is an expert witness, however, he has not submitted an expert report or disclosed Dr. Watson as an expert witness as required by Federal Rule of Civil Procedure 26(a)(2).  Thus, the Court will not consider Dr. Watson's testimony as it is not admissible as evidence.  *See* Fed. R. Civ. P. 56(c)(4).  Moreover, Dr. Watson's testimony does not establish that any representative of EACS that evaluated Norwood using TER considered the degree of Norwood's compliance with his unique obligations as a special education teacher in the TER evaluation; rather, Dr. Watson's testimony only demonstrates what an evaluator using TER should have considered.

[11] It is worth noting that Houser completed TER evaluations of Norwood as well, and found him to be an "effective" teacher according to the TER's criteria.  (DE 171-2 at 112-13, 123-24, 126-27, 129-30).

procedures, case conference protocols, or other policies for special education teachers.

Moreover, while EACS has provided evidence supporting its argument that Norwood failed to satisfy his obligations as a special education teacher, Norwood has not submitted evidence to the contrary. *See Hatch v. Brillion Sch. Dist.*, No. 16-C-802, 2018 WL 3349004, at *11 (E.D. Wis. July 9, 2018) ("The record shows, however, a stark divergence between Hatch and Madison as to whether her actions during 2011 actually reflected adequate progress towards achieving her goals."). Because Norwood has not "challenged the veracity of any of the performance deficiencies noted in" the record, a reasonable factfinder could only conclude that he failed to meet EACS's legitimate employment expectations. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328 (7th Cir. 2002). Furthermore, Norwood's TER reviews may be evidence that EACS did a poor job implementing the TER, "but [this] is not evidence that the proffered reasons [for firing Norwood] were pretextual." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000).

### 2. *Norwood Did Not Suffer an Adverse Employment Action*

EACS argues that Norwood did not suffer an "adverse employment action" because he voluntarily resigned his position. "A resignation is actionable as an adverse employment action only if the resignation qualifies as a constructive discharge." *Martorell v. Galveston Cty., Texas*, 103 F. App'x 538, 540 (5th Cir. 2004) (citation omitted); *see Cooper v. Smithfield Packing Co., Inc.*, 724 F. App'x 197, 202 (4th Cir. 2018) ("And Cooper's voluntary resignation is not an adverse employment action on Smithfield's part." (citation omitted)). The Seventh Circuit "has noted, constructive discharge occurs when an employer makes an employee's working conditions so intolerable that an employee is forced into involuntary resignation." *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009); *see Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004)

("Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." (citations omitted)).

The form of constructive discharge relevant to this case requires that "an employer acts in a manner as to have communicated to a reasonable employee that [he] will be terminated." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (citation and internal quotation marks omitted). "In this situation, if the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id.* (citing *E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002)). But the plaintiff must also show that working conditions had become unendurable; not merely that "the prospect of discharge lurks in the background." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004).

EACS claims that Norwood resigned voluntarily without anyone from EACS communicating to Norwood that his termination was imminent. Furthermore, EACS argues that Norwood cannot show that his working conditions were unbearable or intolerable. EACS's arguments are persuasive for a number of reasons. First, the record lacks evidence indicating that somebody within EACS's administration communicated to Norwood that EACS would fire him if he did not resign; rather, Norwood was convinced to resign by the Union, which is a separate entity from EACS. And while Norwood claims that Giese and Miller told him that Widenhoefer had told them that EACS was going to fire him, the evidence says otherwise. In particular, Geise testified that he and Miller concluded that Norwood would not be able to defend himself should EACS terminate his contract. (DE 152-10 ¶¶ 10-12). In other words, Giese and Miller explained to Norwood that EACS had sufficient cause to terminate him, not that EACS

had decided to do so.

In fact, EACS afforded Norwood an opportunity to present documentation responding to SPED's and EACS's concerns about his performance. (DE 152-3 ¶¶ 103, 110). Norwood chose to resign before submitting documentation in his defense at the December 19, 2014, conference, based on the advice of the Union that he would likely be fired. Thus, "[t]his is not a situation where the 'handwriting was on the wall' and the plaintiff quit 'just ahead of fall of the axe.'" *Chapin*, 621 F.3d at 680 (quoting *Lindale v. Tokheim Corp.*, 145 F.3d 953, 956 (7th Cir. 1998)). Even if EACS had cause and the inclination to terminate Norwood, he has not presented any admissible evidence that he could not have changed the administration's mind by responding to EACS's concerns at the December 19, 2014, conference. *See Cigan*, 388 F.3d at 333 ("How, indeed, could a judge or jury be confident that the superintendent would not have changed his mind once Cigan responded to the initial proposal?").

Norwood makes a series of unsupported arguments that he was told he would be fired if he did not resign. He argues that he was asked to resign by school board members and Dr. Folks; however, the record lacks evidence supporting these arguments. Similarly, although Norwood claims that Dr. Folks composed a termination letter before Norwood resigned, he has not produced evidence of such a letter. Thus, Norwood's arguments that he knew he would be fired if he did not resign fail.[12]

_____

[12] As discussed *supra*, the Court does not consider Rev. Terry's statement or the Union's response to Norwood's charge of discrimination in concluding that Norwood was not constructively discharged. However, even if the Court did consider this evidence, Norwood has not shown that he was constructively discharged because he has demonstrated that EACS subjected him to "unendurable working conditions." *Cigan*, 388 F.3d at 332-33 (citation and internal quotation marks omitted).

Furthermore, Norwood does not argue that he suffered intolerable employment conditions.[13]  At most, Norwood argues that EACS denied him due process in terminating his contract.  Under Ind. Code § 20-28-7.5-1(e), when a school's governing body cancels a teacher's contract, it must provide notice to the teacher.  However, because Norwood resigned and was not terminated, EACS was under no obligation to provide such notice.  In reality, Norwood was afforded due process by being given the opportunity to respond to EACS's concerns.  *Cigan*, 388 F.3d at 333 ("It would be odd for courts to say something like:  'Well, it's all a sham, so we'll treat the commencement of the process as a final decision to discharge.'  Then why have the give-and-take at all?").  Moreover, Norwood's unsubstantiated due-process allegation falls short of the derisive behavior that is characteristic of employment discrimination.  *See Chapin*, 621 F.3d at 679-80 (collecting cases).  Therefore, Norwood has failed to demonstrate that he suffered an adverse employment action.

### 3.  *Norwood Cannot Identify a More-Favorably Treated Similarly Situated Employee*

Next, EACS asserts that Norwood cannot "identify a comparator who is similarly situated to him in all material respects," except that the comparator is not African-American and was treated more favorably.  *Greer v. Bd. of Educ. of City of Chi., Ill.*, 267 F.3d 723, 728 (7th Cir. 2001); *see Reyes v. Outdoor Detail, Inc.*, No. 1:15-CV-00086-SLC, 2017 WL 495594, at *5 (N.D. Ind. Feb. 6, 2017) (granting summary judgment in favor of the defendant because the plaintiff did not "present[] any admissible facts about any particular similarly-situated non-

---

[13] In his brief, Norwood appears to argue as separate claims that EACS violated his due-process rights under the Fourteenth Amendment and his Eighth Amendment rights.  (*See* DE 175 at 14).  Because Norwood did not assert these claims in his complaint, they merit no further mention.  *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." (citation omitted)).

Hispanic worker that would tend to show that such a worker was treated more favorably than him"). In determining whether employees are similarly situated, 'a court must look at all relevant factors, the number of which depends on the context of the case.'" *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000), *rev'd on other grounds by Ortiz*, 834 F.3d 760). "Furthermore, in disciplinary cases—in which a plaintiff claims that [he] was disciplined by [his] employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that [he] is similarly situated with respect to performance, qualifications, and conduct." *Id.* (internal citation and quotation marks omitted). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18 (citation omitted).

According to evidence of record, Norwood's relevant conduct includes:

- Scoring 50% or below on three IEP reviews in four school years;

- Failing to comply with Article 7 and IDEA requirements such that a student could not be expelled following a manifestation determination;

- On three occasions, failing to obtain parental consent to excuse a general education teacher from a case conference;

- Distributing an incomplete IEP during a case conference;

- On two occasions, failing to send a finalized IEP to the parents of a student within 10 days of a case conference;

- On two occasion, failing to identify measurable goals in IEPs; and

- Failing to describe his students' progress in achieving measurable goals.

Therefore, a comparator would have engaged in similar conduct.

In his brief, Norwood identifies four potential comparators, C.B., M.S., R.M., and K.S., alleging that each is Caucasian and received IEP review scores of less than 50% in two consecutive IEP reviews.[14] But Norwood mischaracterizes the record. R.M. did not receive IEP review scores of below 50% in two consecutive years; rather, R.M. received a score of less than 50% for only one school year.[15] (DE 152-3 at 39). Similarly, K.S. only scored below 50% on one IEP review. (DE 152-3 at 49). C.B. did score below 50% on three consecutive IEP reviews (DE 152-3 at 39, 42; DE 171-2 at 95), and C.B. was placed on the "Assistance Phase" in December 2013 (DE 152-1 at 156-57). However, unlike Norwood, there is no evidence that C.B. failed to adhere to EACS's expectations with regard to Article 7 and the IDEA compliance after being placed on the Assistance Phase. Thus, C.B., R.M., and K.S. are not comparators for Norwood. (*See* DE 152-13).

M.S. did score below 50% in two consecutive IEP reviews. (*See* DE 152-3 at 40, 43). M.S. also received a "Verbal Warning" for failing to follow protocol with regard to case conference notification, appropriately completing an IEP, setting measureable goals in an IEP, recording progress with IEPs, and completing a transition assessment. (DE 152-1 at 141-43).

---

[14] Norwood alleges that several other teachers are comparators in his "Response to Statement of Undisputed Material Facts." (*See* DE 175 at 19-25). However, as discussed *supra* note 3, the Court may ignore this section of Norwood's brief for failing to conform to Rule 56(c).

[15] Norwood also alleges that R.M. is less qualified than Norwood and replaced him as a special education teacher after he resigned. However, evidence of record indicates that R.M. was a special education teacher along with Norwood, not that R.M. replaced Norwood. (DE 181-4 ¶ 13).

Thus, construing facts in the light most favorable to Norwood, M.S. is likely a comparator.  But M.S. resigned voluntarily shortly after he received a written verbal warning, as did Norwood.  Therefore, a reasonably jury would not be persuaded that M.S. was treated more favorably than Norwood; at most, he was treated the same.  It follows that Norwood has failed to establish that he was treated less favorably than a similarly situated non-African American employee.

### 4. Pretext

"[P]retext means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) (citation omitted).  The Court addressed the issue of pretext *supra*, in determining that Norwood failed to meet EACS's legitimate employment expectations.  *See Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (citation omitted).  Similarly, because Norwood has not presented any evidence disputing that EACS "honestly believe[d] [the given] reasons" for terminating Norwood's contract, "pretext has not been shown." *Kulumani*, 224 F.3d at 685 (citing *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

In sum, there is no dispute in the record that Norwood failed to meet EACS's legitimate employment expectations, that he did not suffer an adverse employment action, and that no non-African American comparator was treated more favorably.  Therefore, a reasonable jury could only find that Norwood has not established a *prima facie* case of discrimination.  *See Khowaja*, 893 F.3d at 1014-15 (citation omitted).  Furthermore, even if Norwood had established a *prima facie* case of discrimination, which he has not, no reasonable jury could conclude that EACS's given reasons for firing him were pretextual.  Therefore, EACS's motion for summary judgment will be granted as to Norwood's claims for discrimination under Title VII and § 1981.

27

C.  <u>Norwood's Retaliation Claims</u>

EACS also moves for summary judgment on Norwood's retaliation claims under Title VII and § 1981.  For the following reasons, Norwood's retaliation claims fare no better than his discrimination claims.

"A Title VII plaintiff may bring only those claims that were included in [his] EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"  *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)).  "This requirement is intended to provide [EACS] with notice of the nature of the claims against it and provide the EEOC and [EACS] with the opportunity to settle the dispute before the parties commence litigation."  *McElligott v. United Parcel Serv., Inc.*, No. 17 C 3491, 2018 WL 1156244, at *4 (N.D. Ill. Mar. 2, 2018) (citation omitted).  "An allegation in an EEOC charge reasonably relates to a federal claim if it involves 'the same conduct and implicate[s] the same individuals.'" *Simpson v. Donahoe*, No. 13 C 6141, 2017 WL 5128996, at *2 (N.D. Ill. Nov. 6, 2017) (alteration in original) (quoting *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2003)).  "The relevant inquiry is what EEOC investigation could reasonably be expected to grow from the original complaint."  *McElligott*, 2018 WL 1156244, at *4 (citations and internal quotation marks omitted).

Here, Norwood's retaliation claim was not included in his EEOC charge, thereby depriving EACS of the opportunity to "settle the dispute" and failing to provide "fair notice of the conduct about which [Norwood] is complaining."  *Geldon*, 414 F.3d at 819 (citation omitted).  Similarly,   Norwood's complaint did not plead any facts or conduct concerning

28

retaliation reasonably related to his charge of discrimination, and therefore, his retaliation claim could not be "reasonably expected" to grow from his complaint. *See Ezell*, 400 F.3d at 1046; *Simpson*, 2017 WL 5128996, at *2.

Furthermore, Norwood has not submitted evidence that he engaged in protected activity—that is, that he ever complained about discrimination. *See Carter v. Chi. State Univ*., 778 F.3d 651, 657 (7th Cir. 2015) ("To succeed [on a claim of retaliation], [the plaintiff] must demonstrate that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two." (citing *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009))). Consequently, "[o]n this record no reasonable jury could conclude" that EACS retaliated against Norwood. *Emerson v. Dart*, 900 F.3d 469, 473 (7th Cir. 2018); *see Tomanovich v. City of Indianapolis*, 457 F.3d 656, 664 (7th Cir. 2006) (dismissing retaliation claims where the plaintiff did not complain about the employer's alleged discrimination resulting from a protected class, and thus, did not engage in protected activity); *see generally Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (holding "that summary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'" (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005))).

In any event, Norwood has not responded to EACS's argument that the Court should grant summary judgment in EACS's favor with respect to Norwood's retaliation claims. The law is clear that failure to respond to issues raised in a summary judgment motion constitutes waiver. *See* Fed. R. Civ. P. 56(e); *Gaerte v. Great Lakes Terminal & Transp. Corp.*, No. 3:05

CV 1141, 2007 WL 2461650, at *2 (N.D. Ind. Aug. 27, 2007) ("[I]ssues raised in [a] summary judgment motion that [a] non-moving party does not properly respond to are deemed waived[.]" (citing *E.E.O.C. v. U.S. Bell*, No. 2:03 CV 237, 2005 WL 1683979, at *15 (N.D. Ind. July 19, 2005))); *see also Palmer v. Marion Cty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) (deeming a claim abandoned when a party "failed to delineate his . . . claim in his district court brief in opposition to summary judgment" (citations omitted)).  Therefore, the Court will grant EACS's motion for summary judgment as to Norwood's claims for retaliation under Title VII and § 1981.

## V.  CONCLUSION

For the foregoing reasons, EACS's motion to strike (DE 179) is GRANTED in part and DENIED in part, as set forth in this Opinion and Order.  Additionally, Norwood's motion to dismiss, which the Court construes as a motion for sanctions (DE 190), is DENIED.  Finally, EACS's motion for summary judgment (DE 150) is GRANTED, and Norwood's claims against EACS are DISMISSED.  The Clerk is DIRECTED to enter judgment in favor of EACS and against Norwood.

SO ORDERED.

Dated this 28h day of September 2018.


/s/ Susan Collins                         
Susan Collins
United States Magistrate Judge